DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellants, Alison Wilson, Kenna Wilson, Joan Stalnaker, Larry Lane, Leah Lane, Pat Wolmagott, Helen Kline, Norman Kline, Barbara Brown, Sandy Vetter, Rose Bowen, and Maryann Fox ("Appellants") appeal the judgment of the Summit County Court of Common Pleas in favor of Appellee, The United Fellowship Club of Barberton (the "Club") We affirm.
 {¶ 2} Appellants filed a complaint against the Club and the President of the Club (Bud Gelhausen) for gender discrimination and retaliation after they were denied membership to an all male hunting and fishing club in Barberton, Ohio. *Page 2 
The matter was tried to a jury beginning on February 14, 2006. Mr. Gelhausen was dismissed at the close of Appellant's case in chief. The jury found in favor of the Club, finding it to be a private club and awarding no actual damages. However, the jury also awarded punitive damages to three of the Appellants on the retaliation claim. The trial court later struck the punitive damages award based on the fact that the jury had not awarded compensatory damages. On March 2, 2006, Appellants filed a motion for new trial or, in the alternative, a motion for judgment notwithstanding the verdict, which the trial court denied on April 24, 2006. The trial court entered final judgment on February 17, 2006.
 {¶ 3} Appellants timely appealed the trial court's February 17, 2006 judgment entry raising five assignments of error.
 First Assignment of Error "The trial court erred in refusing to give the Appellants' requested jury instruction relative to the definition of a `place of public accomodation [sic].'"
 Fourth Assignment of Error "The trial court committed `plain error' is failing to instruct the jury of the necessity of finding compensatory damages prior to awarding punitive damages."
 {¶ 4} Appellants assert that the trial court erred by not instructing the jury as to the weight to be given to the criteria they analyzed in determining whether the Club was a place of public accommodation. Appellants proposed a jury instruction that instructed the jury to give greater weight to the selectivity *Page 3 
requirement than to other factors. The Appellants' proposed jury instruction was based on two federal cases from the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Virginia.
 {¶ 5} Appellants also asserted that the trial court erred by not instructing the jury that in order to award punitive damages, they must first award compensatory damages.
 {¶ 6} The Club asserts that the jury instructions were correct statements of Ohio law and did not mislead the jury. The Club asserts that Ohio law does not place any emphasis on the selectivity criteria. Finally, the Club notes that because Appellants did not object to the damages instructions given at trial, this Court can only review Appellants' fourth assignment of error for plain error, which error is not evidenced by the instructions at issue here.
 {¶ 7} "[T]he giving of jury instructions is within the sound discretion of the trial court." Van Scyoc v. Huba, 9th Dist. No. 22637,2005-Ohio-6322, at ¶ 6; State v. Brady, 9th Dist. No. 22034,2005-Ohio-593, at ¶ 5, citing State v. Hipkins (1982), 69 Ohio St.2d 80,82. "We review such a decision under an abuse of discretion standard."Van Scyoc at ¶ 6, citing State v. Clay, 9th Dist. No. 04CA0033-M,2005-Ohio-6, at ¶ 5. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. "Therefore, the decision of the trial court will not be *Page 4 
disturbed on review unless the trial court acted unreasonably, arbitrarily or unconscionably." Van Scyoc at ¶ 6, citing Brady at ¶ 5.
 {¶ 8} "This Court has held that `[i]n order to demonstrate reversible error with respect to a trial court's refusal to give a proposed instruction, an appellant must demonstrate that, first, the trial court abused its discretion by failing to give the requested instruction, and second, that the appellant was prejudiced as a result.'" Van Scyoc
at ¶ 7, quoting Carpenter v. Wellman Prods. Group, 9th Dist. No. 03CA0032-M, 2003-Ohio-7169, at ¶ 12, citing Irvine v. Akron BeaconJournal, 147 Ohio App.3d 428, 2002-Ohio-2204, at ¶ 31.
 {¶ 9} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Haller v. Goodyear TireRubber Co., 9th Dist. No. 20669, 20670, 2002-Ohio-3187, at ¶ 18, citingMarshall v. Gibson (1985), 19 Ohio St.3d 10, 12. "`A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced.'"Haller at ¶ 18, citing Marshall, 19 Ohio St.3d at 12 (citations omitted).
 {¶ 10} An appellate court must review the jury instructions as a whole. Haller at ¶ 19. "`If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been mislead. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute *Page 5 
reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party.' (Citations omitted.)" Haller at ¶ 19, quoting Wozniak v. Wozniak (1993),90 Ohio App.3d 400, 410; see, also, Kokitka v. Ford Motor Co. (1995),73 Ohio St.3d 89, 93.
 {¶ 11} We will now discuss each of Appellants' errors vis-à-vis the jury instructions.
1. Place of Public Accommodation Instruction
 {¶ 12} It is undisputed that the case turned on whether or not the jury found the Club to be a place of public accommodation. If the jury found the Club to be a place of public accommodation, it could consider Appellants' claims for gender discrimination because pursuant to R.C.4112.02(G):
 "It shall be an unlawful discriminatory practice: * * * "G. For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, disability, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation."
 {¶ 13} The trial court instructed the jury as follows: "Public Accommodation Defined
 "A `place of public accommodation' means any inn, restaurant, eating house, barber shop, public conveyance by air, land, or water, theatre, store, or place for the sale of merchandise, or any place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public.
 "Factors to be considered *Page 6 
 "In deciding whether the United Fellowship Club is a private club or an organization constituting `a place of public accommodation,' you may consider the following factors existing on and prior to September 1998:
 "(1) The bylaws and other organizational documents of United Fellowship Club;
 "(2) the general rules of United Fellowship Club, whether written or oral;
 "(3) the membership policies of the United Fellowship Club including how it seeks members;
 "(4) genuine selectivity of membership
 "(5) whether the United Fellowship Club advertises for members or in some way seeks members from the general public;
 "(6) the policies and/or actions of the United Fellowship Club towards the general public and/or non-members which includes social events and fund raisers on the camp grounds;
 "(7) The fences, gates, chains and/or signage, if any, at the entrances to the real property of United Fellowship Club;
 "(8) the existence or non-existence of cable or other enclosure material at the real property of United Fellowship Club;
 "(9) the use of the facilities by non-members;
 "(10) the United Fellowship Club's purpose;
 "(11) whether the United Fellowship Club is for profit or non-profit corporation
 "(12) the history of the organization.
 "If you find by a preponderance of the evidence the United Fellowship Club is an organization constituting `a place of public accommodation,' then you shall consider Count I and Count II.
 "If you find that the Plaintiffs failed to prove by a preponderance of the evidence that United Fellowship Club constitutes `a place of *Page 7 
public accommodation,' then you are to complete the verdict forms in favor of United Fellowship Club as to the claim of each of the Plaintiffs in making a claim in Count I — Gender Discrimination."
 {¶ 14} The definition of "place of public accommodation" set forth in the trial court's instruction is a quote from R.C. 4112.01 and is therefore a correct statement of law. The source of the twelve factors set forth in the trial court's jury instruction is unclear, as there is no citation on the written jury instruction nor a reference to a citation otherwise in the record. However, Appellants have not asserted any claim that the twelve criteria posed are incorrect statements of Ohio law. In fact, Appellants' counsel stated in the record that the jury instructions were "otherwise accurate and wonderful," except as to the court's decision not to instruct the jury to give greater weight to one of the criteria in the trial court's instruction, i.e., genuine selectivity. Appellants proposed a jury instruction based on non-Ohio law that so instructed. Appellants have pointed this court to no Ohio law that supports its proposed instruction. Absent any argument or citation to Ohio law that the trial court's instruction was an incorrect statement of law, we cannot find that the trial court abused its discretion.
2. Damages Instructions
 {¶ 15} Appellants did not object to the damages instructions. Civ.R. 51(A) governs appellate review of jury instructions and provides in pertinent part:
 "On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires *Page 8 
to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." Civ.R. 51(A).
 {¶ 16} "This Court has consistently adhered to the tenets of Civ.R. 51(A)." Van Scyocat ¶ 11; Callahan v. Akron Gen. Med. Ctr., 9th Dist. No. 22387, 2005-Ohio-5103; Patio Enclosures, Inc. v. Four Seasons Mktg.Corp., 9th Dist. No. 22458, 2005-Ohio-4933; Fisher v. Lorain, 9th Dist. No. 02CA008032, 2003-Ohio-526. Moreover, the Ohio Supreme Court has held that "`[w]hen a party fails to object to the giving of or failure to give a jury instruction before the jury retires to consider a verdict, the party may not assign as error the giving of or failure to give such instruction."' Fisher at ¶ 7, quoting Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, paragraph one of the syllabus. "Therefore, we can only take notice of the error if it rises to the level of plain error." State v. Chisolm, 9th Dist. No. 05CA008782, 2006-Ohio-5051, at ¶ 26.
 {¶ 17} "In civil matters, `the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself (Citations omitted)" PatioEnclosures at ¶ 71, citing Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus. *Page 9 
 {¶ 18} Appellants have failed to demonstrate such exceptional circumstances exist in the instant case. "The plain error doctrine should not be applied to reverse a civil judgment in order to allow the presentation of issues which could have easily have been raised and determined in the initial trial." Patio Enclosures at ¶ 72, citingGoldfuss, 79 Ohio St.3d at 122. Appellants have alleged that the damages instructions, to which they had several opportunities to object, failed to instruct the jury that punitive damages could not be awarded unless the jury first awarded compensatory damages. Presumably, Appellants are arguing that had the court so instructed, the jury would have awarded compensatory damages. Appellants assert that the incomplete nature of the instructions constituted plain error.
 {¶ 19} The record does not state the basis for the jury's punitive damages award and the record is void of any jury interrogatories that so explain. Accordingly, this Court is without knowledge of the testimony the jury considered when it awarded punitive damages and failed to award compensatory damages. Therefore, we cannot say that, but for the failure of the trial court to include a specific instruction as to the circumstances in which the jury could award punitive damages, they would not have awarded them and/or they would have awarded compensatory damages, which would have allowed the punitive damages award to stand. *Page 10 
 {¶ 20} Moreover, Appellants have not argued that the law as to each form of damages (compensatory, nominal and punitive) was incorrect. We must presume the jury understood the instructions and, pursuant to those instructions, did not find the Club liable for nominal or compensatory damages. Based on the foregoing, Appellants have failed to establish plain error.
 {¶ 21} We finally note that, although not expressly stated, the instructions do imply that actual damages must be awarded prior to the award of punitive damages. The instructions state that "[i]f you find for one or more of the Plaintiffs on either one or both of the Counts, you will also decide whether United Fellowship Club shall be liable for punitive damages in addition to any other damages that you award[.]" (Emphasis added.) The jury interrogatories state that "fijn additionto actual damages, we, the jury, find by clear and convincing evidence that the plaintiff be awarded punitive damages in the sum of[.]" (Emphasis added). Appellant's first and fourth assignments of error are overruled
 Second Assignment of Error "The trial court erred in refusing to direct a verdict finding that [Appellee] was `a place of public accomodation [sic].'"
 Third Assignment of Error "The trial court erred in refusing to grant a new trial or to enter judgment notwithstanding the verdict."
 {¶ 22} Appellants argue that they were entitled to a directed verdict, JNOV, or new trial because reasonable minds could only come to the conclusion that the *Page 11 
Club was a place of public accommodation, which, given the Club's admission of discrimination, is dispositive. Appellants assert that they were entitled to a new trial based on the trial court's erroneous instruction to the jurors as to how to determine whether the Club was a private club or a place of public accommodation. We disagree.
 {¶ 23} "When reviewing the propriety of a trial court's decision regarding a motion for JNOV, an appellate court employs the standard of review applicable to a motion for a directed verdict." Kane v.O'Day, 9th Dist. No. 23225, 2007-Ohio-702, at ¶ 18, citing Posin v.A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. "An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law." Kane at ¶ 18, citing Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257, citing Nichols v. Hanzel (1996),110 Ohio App.3d 591, 599. "A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." Kane at ¶ 18, citing Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284, citing Durham v. Warner Elevator Mfg. Co. (1956),166 Ohio St. 31, 36; Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68, citing Rohde v. Farmer (1970), 23 Ohio St.2d 82, 91.
 {¶ 24} Pursuant to Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue *Page 12 
reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" "[I]f the party opposing the motion for a directed verdict fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate." Kane at ¶ 19, citing Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. "Conversely, the motion must be denied where substantial evidence exists upon which reasonable minds may reach different conclusions." Kane at ¶ 19, citing Posin,45 Ohio St.2d at 275.
 {¶ 25} Finally, this court must "construe the evidence adduced at trial and all reasonable inferences arising therefrom" in the non-movant's favor. Fischer v. Dairy Mart Convenience Stores, Inc.
(1991), 77 Ohio App.3d 543, 550. The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59(A) is reviewed for an abuse of discretion. Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307,312.
 {¶ 26} In our discussion of Appellants' first assignment of error, we found that the trial court's instruction regarding how the jury should determine if the Club was a place of public accommodation is a correct statement of Ohio law. Thus, our review is limited to whether reasonable minds, applying that law, could come but to one conclusion as to the nature of the Club as place of public accommodation. *Page 13 
 {¶ 27} Based on our review of the record we find that reasonable minds could reach different conclusions and that Appellants' motion for directed verdict and motion for judgment notwithstanding the verdict were properly denied. Moreover, based upon our discussion of Appellants' first assignment of error vis-à-vis the alleged erroneous jury instruction, we find that the trial court did not abuse its discretion in denying Appellants' motion for new trial.
 {¶ 28} The following testimony is illustrative of our finding on this assignment of error:
 {¶ 29} The jury heard the testimony of Harold Gelhausen, Bill Sands and David McKee, all of whom were officers and/or trustees of the Club, a non-profit organization, during the time period in question. They testified to the Club's application and selection process and to the rules of the Club, which were set forth in the Club's written by-laws, constitution and rules. Although only two applicants had been declined membership through the application process, the process was of a formal nature and included: (1) an invitation to join by a current member; (2) an application and $10 fee; (3) the reading of the application at a meeting; (4) a screening procedure; and (5) a vote before the full membership. Potential members were required to have two sponsors and were on probation for the first year of membership, along with their sponsors. The Club did not advertise for new members. Every witness testified that there was an application process in place. *Page 14 
 {¶ 30} There was evidence that the Club hosted numerous events, including turkey shoots, steak dinners, pair-a-dice night, Italian night, and the annual picnic to which members could bring guests. There was some testimony that the general public was invited to some events as a revenue source for the Club although some witnesses denied such public invitation. Evidence established that only members and their guests could lease or use the Club facilities. Guests were required to have members with them to swim, fish or camp, and only one guest per member was permitted to fish. There was evidence that the members discussed how to reprimand members who broke the rules well before the dispute at issue in this case.
 {¶ 31} There was evidence that the Club property was cordoned by a gate at the main entrance that indicated the Club was private, and a chain at the back entrance. Testimony established that the "private" main entrance sign had been in place well before the dispute at issue in this case. There was testimony that the club's letterhead and newsletter defined the club as "a private organization," although when that language was included was in dispute.
 {¶ 32} Based on the foregoing, we find that reasonable minds could have applied the law provided by the judge to determine that the Club was either a place of public accommodation or private in nature. The trial judge declined cross-motions for directed verdict on the issue of whether the Club was a place of public accommodation or private in nature. In so ruling, the trial judge noted the *Page 15 
conflicting evidence and agreed with the earlier ruling of the court denying summary judgment on the same issue, finding that the issue should be presented to a jury. As noted above, if sufficient evidence exists upon which reasonable minds can come to different conclusions, a motion for directed verdict or motion for judgment notwithstanding the verdict must be denied. Moreover, based on our discussion of Appellant's first assignment of error, we find that the trial court did not abuse its discretion in denying Appellants' motion for new trial based upon the trial court's jury instruction on the issue of place of public accommodation. Appellants' second and third assignments of error are overruled.
 Fifth Assignment of Error "The trial court erred in disallowing the presentation to the jury of the administrative findings and conclusions of the Ohio Civil Rights Commission."
 {¶ 33} Appellants assert that the trial court erred in not permitting them to offer into evidence the findings of the Ohio Civil Rights Commission. Appellants acknowledge this Court's decision in Hanson v.Ohio Edison (Jan. 10, 1996), 9th Dist. No. 17169, at *4, but argue that: (1) because OCRC findings are not specifically listed by the legislature as a type of administrative finding that should be excluded; and (2) because R.C. 4112.08 is to be liberally construed, the trial court erred in excluded the OCRC findings here. We disagree.
 {¶ 34} "The trial court is vested with broad discretion in determining the relevancy of evidence and will not be overturned absent an unreasonable, *Page 16 
unconscionable or arbitrary ruling." Hanson, 9th Dist. No. 17169, at 4, citing Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. State agency findings are admissible if "those findings are deemed relevant to the matter under consideration." Harden v. Dayton Human Rehab. Ctr. (S.D. Ohio 1981), 520 F.Supp. 769, 773.
 {¶ 35} In Hansen, this Court held that the trial court's ruling barring any investigative reports and/or findings rendered by the OCRC was proper. The trial court in Hansen found the OCRC findings to be hearsay and highly prejudicial; however, the trial court inHansen did allow the plaintiff to ask questions from the papers submitted to the OCRC as long as no reference to the findings was made. We noted in Hansen that the appellant was not prejudiced by this limited use of the OCRC findings.
 {¶ 36} Here, the trial judge barred two OCRC witnesses from testifying on behalf of Appellants, but allowed Appellants to offer into evidence, through other witnesses, that a complaint with the OCRC had been filed and to impeach any witness whose testimony contradicted his testimony from the OCRC proceedings as long as there was no mention of the source of the previous testimony. As we held in Hansen, we find that the Appellants were not prejudiced by the limited use of the OCRC findings. Appellants established at trial that a complaint with the OCRC had been filed, which information was relevant to their claim for retaliation. Moreover, as in Hansen, the Appellants have not pointed this Court to *Page 17 
any part of the record wherein they were not permitted to use the OCRC findings to impeach any witness who testified conversely to their testimony before the OCRC. Accordingly, we find that the trial court did not abuse its discretion in barring the presentation of the complete OCRC findings to the jury.
 {¶ 37} Appellants' fifth assignment of error is overruled.
 {¶ 38} Each of Appellants' assignments of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 18 
Costs taxed to Appellants.
MOORE, J. CONCURS IN JUDGMENT ONLY