[Cite as *State v. Foos*, 2016-Ohio-8441.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

CITY OF AKRON  C.A. No. 28086

    Appellee

    v.  APPEAL FROM JUDGMENT
ENTERED IN THE
CODY M. FOOS  AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
    Appellant  CASE No. 15TRC11134

DECISION AND JOURNAL ENTRY

Dated: December 28, 2016

MOORE, Presiding Judge.

{¶1} The Defendant, Cody Foos, appeals from the judgment of the Akron Municipal Court. This Court affirms in part, vacates in part, and dismisses the appeal in part.

I.

{¶2} In the early morning hours of July 3, 2015, Mr. Foos was driving with two passengers in the car, when he collided with a concrete barrier wall at a highway interchange. Officer David Hayes of the Akron Police Department cited Mr. Foos for OVI in violation of Akron Codified Ordinance ("Loc.Ord.") 73.01(A) and failure to control in violation of Loc.Ord. 73.13(A). Mr. Foos pleaded not guilty to the charges. The OVI charge proceeded to jury trial. The jury found Mr. Foos guilty of OVI. The trial court then found Mr. Foos guilty of failure to control. On December 21, 2015, the trial court imposed sentence. In a notice of appeal dated January 20, 2016, Mr. Foos appealed from his conviction, and he now presents three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

[MR. FOOS'] CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶3}** In his first assignment of error, Mr. Foos contends that the weight of the evidence does not establish that he was driving while impaired. We disagree.

**{¶4}** When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶5}** Here, the jury found Mr. Foos guilty of violating Loc.Ord. 73.01(A)(1)(a), which provides that "[n]o person shall operate any vehicle within the municipality, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." "Under the influence" has been defined as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *State v. Adams*, 9th Dist. Medina No. 13CA0008-M, 2013-Ohio-4258, ¶ 25, quoting *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, ¶ 92, quoting *Toledo v. Starks*, 25 Ohio App.2d 162, 166 (6th Dist.1971). Although Mr. Foos does not dispute that he was the driver of the car, Mr. Foos contends that the weight of the evidence does not establish that he was under the influence of alcohol. We limit our review accordingly.

{¶6}    At trial, the State presented the testimony of Officers David Hayes and Matthew Whitmire of the Akron Police Department.  Officer Hayes testified that on July 3, 2015, he responded to the accident.  When he arrived, he saw three individuals standing outside the car, which had skidded and crashed into a barrier wall.  There was heavy front end damage to the car and skid marks on the road.  The officer called for a tow truck, and he also called for backup from other officers to assist with traffic.  The three men standing by the highway appeared very intoxicated, and the officer inquired as to who was driving the car.  Two of the men "sheepishly" pointed to Mr. Foos, and Mr. Foos acknowledged that he was driving, and he handed the officer his license.  Officer Hayes recalled that Mr. Foos stated that a car had hit him from behind and shoved him into the wall.  However, the officer noted that there was only one set of skid marks, and the front of Mr. Foos' car was smashed, but the rear was completely undamaged.  The officer assessed the situation as a one-car crash into the wall, because he believed it was obvious that there were no other vehicles involved.  While the tow truck was on its way, the officer spoke with Mr. Foos in the officer's cruiser, and he observed that Mr. Foos was very "drunk," had a strong odor of alcohol about him, and slurred his speech.  Mr. Foos was wearing a wrist band that appeared to be of the type used by bars.  He appeared "very intoxicated."  The officer decided to perform field sobriety tests, and he had to almost "forcibly" get Mr. Foos out of the officer's cruiser because he did not want to exit the cruiser.  After he did, Mr. Foos leaned up on the cruiser and had to use it to steady himself.  He was "kind of zoning out, kind of not paying attention.  Almost, you think almost falling asleep, but more, * * * just a very drunk behavior."  The officer attempted to administer field sobriety tests, but Mr. Foos refused.  He then placed Mr. Foos under arrest.

{¶7} Officer Hayes further testified that, after the tow truck arrived, the officer drove to the parking lot of an establishment off of the highway. There, the officer read to Mr. Foos a long paragraph from the BMV Form 2255, which the officer stated he reads to everyone he arrests for OVI. This paragraph explains the consequences for refusing a chemical test. The officer stated that because Mr. Foos "was refusing everything, [the officer] didn't see any reason to go to the police station to offer him a test there." After reading this portion of the BMV Form 2255 to Mr. Foos, Mr. Foos refused to take any kind of test. Officer Hayes cited Mr. Foos for failure to control and OVI, and he then drove Mr. Foos home.

{¶8} On cross-examination, Officer Hayes reviewed the BMV Form 2255 that he had used in this case, and he acknowledged that the form used here was updated in July of 2010, but he should have used a newer version of the form that was updated in 2013. The officer indicated that the department did not have a working breathalyzer machine that he could have used to perform a chemical breath test on Mr. Foos on the night in question. During cross-examination of the officer, the defense played the officer's cruiser video, which did not contain audio. The officer noted that, when he arrived at the scene, Mr. Foos and the other men with him were not stumbling, and Mr. Foos had no difficulty retrieving his license to hand to the officer.

{¶9} Officer Whitmire testified that he responded Officer Hayes' call for backup at the scene to slow down traffic. He was able to observe Mr. Foos in the back of Officer Hayes' cruiser, and Mr. Foos seemed somewhat lethargic. When Officer Hayes opened the cruiser door, Officer Whitmire could smell a fairly strong odor of alcoholic beverage. After the tow truck arrived, Officer Whitmire met Officer Hayes at a parking lot, at which point Officer Hayes read Mr. Foos the BMV Form 2255, and Mr. Foos refused chemical testing.

{¶10} The defense presented the testimony of Mr. Foos and Patrick Dell. Mr. Foos testified that on the night of July 2, 2015, Mr. Dell invited him to play pool at a bar. He went to the bar, and he consumed one beer as he played pool. Thereafter, Mr. Foos drove Mr. Dell and another man, named Robert Ebner, to a strip club, but Mr. Foos consumed no other alcoholic beverage that evening aside from the one beer at the bar. After leaving the strip club, Mr. Foos was driving the men home, when he felt a crack or hole in the road. As soon as Mr. Foos felt his car hit that defect in the road, he felt his car "go down[,]" and he lost control of the car, crashing into the concrete barrier. Mr. Foos maintained that he did not tell a police officer that his car was struck from the rear; Mr. Ebner did, and when the officer asked Mr. Foos if that was what had happened, he said no. Mr. Foos identified photographs that he had obtained from Google maps of the area of the accident. The photographs display a large crack running across the roadway. Mr. Foos indicated that, after the accident, he drove on the roadway in the area of the accident, and he maintained that the Google maps pictures accurately reflected the then current condition of the road. Mr. Foos testified that he could not stop and take photographs of the road condition himself because of safety concerns.

{¶11} Mr. Dell testified that, in the evening hours of July 2, 2015, he and Mr. Ebner, who is Austrian and speaks with an Austrian accent, were at a bar when Mr. Foos arrived. The men played a game of pool, and Mr. Foos then drove them to a strip club. Mr. Foos was driving normally that night, and he did not seem intoxicated. Just prior to the accident, Mr. Dell felt the car go into "a pothole sort of" and then he heard the tires squeal. When he opened his eyes, the airbags were deployed. Mr. Dell recognized a defense exhibit containing a Google map picture discussed above, as a picture of the roadway where Mr. Foos was driving just prior to the accident. Mr. Dell recalled that someone had made a comment after the police officer arrived

that the car was hit from behind, but Mr. Dell believed it was Mr. Ebner who said that, because he recalled this being said in Mr. Ebner's accent. On cross-examination, Mr. Dell indicated that he was drinking a "little of everything" on the night of the accident and that he was probably drinking beer at the strip club. Mr. Dell further indicated that he believed that he was drunk the night of the accident.

{¶12} On appeal, Mr. Foos maintains that weight of the evidence does not establish that Mr. Foos was under the influence of alcohol when he crashed into the concrete barrier.

{¶13} However, although Mr. Dell's assessment of Mr. Foos, and Mr. Foos' recollection of his own condition, contradicted Officer Hayes' assessment that Mr. Foos was "drunk," or "intoxicated[,]" a conviction is not against the manifest weight because the trier of fact chose to credit the State's version of events. *See State v. Shank*, 9th Dist. Medina No. 14CA0090-M, 2016-Ohio-7819, ¶ 29. Moreover, Mr. Foos' testimony regarding the cause of the accident at trial contradicted the statement that Officer Hayes had recalled Mr. Foos making at the scene. Although Mr. Foos and Mr. Dell maintained that Mr. Ebner made the statement regarding being hit from the rear, the jury could accept or reject any part of their testimony. *See State v. Kudla*, 9th Dist. Summit No. 27652, 2016-Ohio-5215, ¶ 57. Nor was the jury required to accept that the crash had occurred as a result of a defect in the road. *See id.*

{¶14} Our review of the record indicates that the officers presented testimony that Mr. Foos was involved in a single car crash, that he emitted a strong odor of alcohol, that his speech was slurred, that he was "zoning" out when the officer spoke with him, and that he lacked balance to steady himself when the officer removed him from the cruiser to attempt to perform field sobriety tests. A reasonable inference can be drawn from these facts that Mr. Foos had "consumed some intoxicating beverage in such quantity that its effect on him adversely

affect[ed] his actions, reactions, conduct, movement or mental processes or impair[ed] his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *See Adams*, 2013-Ohio-4258, at ¶ 25. We cannot say that this is the extraordinary case where the jury clearly lost its way in finding Mr. Foos guilty of OVI. Accordingly, Mr. Foos' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY INCLUDING A JURY INSTRUCTION REGARDING [MR. FOOS'] REFUSAL TO TAKE A CHEMICAL TEST[.]

{¶15} In his second assignment of error, Mr. Foos contends that the trial court erred in instructing the jury that it could consider his refusal to submit to a chemical test when considering whether he was under the influence of alcohol. In response to this assignment of error, the State maintains that Mr. Foos has forfeited his challenge to the instruction by failing to renew his objection to the instruction when provided the opportunity to do so.

{¶16} Crim.R. 30 provides, in relevant part, that "[o]n appeal, a party may not assign as error the giving * * * [of] any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury." "[W]here the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute," and the party challenging the instruction has been unsuccessful in challenging the charge to be given, "such party does not waive his objections to the court's charge by failing to formally object thereto." *State v. Wolons*, 44 Ohio St.3d 64, 67 (1989).

{¶17} At trial, after the parties rested, the trial court heard arguments from the parties as to whether an instruction should be given to the jury regarding inferences that could be drawn from Mr. Foos' refusal to submit to chemical testing. The defense opposed inclusion of the

instruction. Thereafter, the trial court indicated that it would do its own research on this issue and make a decision. When the proceedings came back on the record, the following exchange occurred:

> [TRIAL COURT]: * * *. We have gone over all of the jury instructions and I believe that they are acceptable to everyone; is that correct?
>
> [THE STATE]: Yes, Your Honor.
>
> [DEFENSE COUNSEL]: Yes, Your Honor.

**{¶18}** The defense did not then state any objection to the instructions or renew the argument against the chemical test refusal instruction. In its instructions to the jury, the trial court stated:

> Refusal. Evidence has been introduced indicating the Defendant was asked but refused to submit to a chemical test to determine the amount of alcohol in his system for the purpose of suggesting that the Defendant believed that he was under the influence of alcohol. If you find the Defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol.

*See Maumee v. Anistik*, 69 Ohio St.3d 339 (1994), syllabus (approving of substantially similar instruction regarding refusal to submit to a chemical test of breath).

**{¶19}** Because the trial court inquired of the attorneys whether the jury instructions were acceptable, and Mr. Foos did not indicate any opposition to the instructions, the State maintains that Mr. Foos has forfeited any argument on appeal with respect to the instruction, save for that of plain error. In support, the State cites this Court's decision in *Van Scyoc v. Huba*, 9th Dist. Summit No. 22637, 2005-Ohio-6322.

**{¶20}** In *Van Scyoc*, the Appellant requested the trial court to include an instruction on dual causation. *Id.* at ¶ 3. The trial court declined to include this instruction. On appeal, this Court noted that, at trial, the Appellant brought the issue of the dual causation instruction "to the

attention of the trial court, argued her position and clearly stated that the instruction should be included." *Id.* at ¶ 17. We concluded that the Appellant's conduct in that regard was equivalent to an objection to the trial court's failure to include the instruction. *Id.* at ¶ 18*; see* Civ.R. 51(A) (containing language similar in substance to the here relevant portion of Crim.R. 30). However, in *Van Scyoc*, we further noted that Appellant failed to renew her objection when the trial court later offered the opportunity. *Id.* at ¶ 18. Instead, the Appellant indicated to the trial court that she had no objection to the instructions, which did not include her requested instruction on dual causation. *Id.* at ¶ 13-14. This Court reasoned that "prudence and good sense mandate renewal of an objection when given the opportunity by the trial court, and this Court is unaware of a reason why the objection at issue was not renewed. Accordingly, we find that Appellant effectively withdrew her objection to the submitted jury charge when she declined to renew it when specifically provided an opportunity to do so." *Id.* at ¶ 18. Based upon the effective withdrawal of the objection, we concluded that the Appellant had forfeited all argument as to the jury instructions on appeal, except for plain error. *Id.* at ¶ 19.

{¶21} Likewise, here, after defense argued against inclusion of the refusal instruction, the trial court decided to include the instruction, and it specifically asked counsel if the instructions were acceptable. The defense responded in the affirmative. Accordingly, the defense's objection to the instruction was effectively withdrawn, and Mr. Foos has forfeited all but plain error argument with respect to the instruction on appeal. However, as he has made no plain error argument on appeal, we decline to create one on his behalf. *See id.* On this basis, Mr. Foos' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY DENYING [MR. FOOS'] ALS APPEAL IN LIGHT OF THE FACT THAT THE FORM 2255 INFORMATION READ TO

[MR. FOOS] WAS NOT THE CURRENT STATEMENT OF THE LAW AND THE ARRESTING OFFICER DID NOT COMPLY WITH THE FORMAL REQUIREMENTS OF CONDUCTING A TEST OF THE ALCOHOL LEVEL IN [MR. FOOS'] BLOOD[.]

**{¶22}** In his third assignment of error, Mr. Foos contends that the trial court erred in denying his appeal from his administrative license suspension ("ALS"). Because Mr. Foos failed to timely appeal from the trial court's order denying his ALS appeal, we do not reach the merits of Foos' third assignment of error.

**{¶23}** "An administrative license suspension and a criminal prosecution for [OVI] which arise from the same arrest are separate proceedings." *Akron v. Turner*, 9th Dist. Summit No. 26790, 2013-Ohio-4578, ¶ 7, quoting *State v. Willard*, 9th Dist. Medina No. 04CA0045-M, 2005-Ohio-1627, ¶ 8. "A trial court's determination of an administrative-license-suspension appeal is an order entered in a special proceeding and is final pursuant to R.C. 2505.02." *Turner* at ¶ 7, quoting *State v. Williams*, 76 Ohio St.3d 290 (1996), paragraph two of the syllabus. "Accordingly, to timely appeal from a court's denial of an ALS appeal, a defendant must file his or her notice of appeal within thirty days." *Turner* at ¶ 7, citing *Willard* at ¶ 8. "Where an untimely appeal has been filed, an appellate court lacks jurisdiction to consider the merits, and the appeal must be dismissed." *State v. Myers*, 9th Dist. Wayne No. 08CA0041, 2009-Ohio-2082, ¶ 7, quoting *Metropolitan Bank & Trust Co. v. Roth*, 9th Dist. Summit No. 21174, 2003-Ohio-1138, ¶ 15.

**{¶24}** Here, Mr. Foos filed an ALS appeal in the trial court on August 5, 2015. After a hearing, the trial court issued an order, dated August 25, 2015, denying the ALS appeal. On October 15, 2015, Mr. Foos moved the court to reconsider his ALS appeal. On November 2, 2015, the trial court issued an order denying Mr. Foos' motion to reconsider his ALS appeal.

{¶25} Because the trial court's August 25, 2015 order denied Mr. Foos' ALS appeal, it was a final appealable order, from which he had thirty days to file an appeal. *Williams* at paragraph two of the syllabus; *Willard* at ¶ 8. Mr. Foos' did not file his appeal until January 20, 2016, and he did not appeal from the denial of the ALS appeal. Accordingly, his challenges to the trial court's August 5, 2015 denial of his ALS appeal are not properly before us, and we lack jurisdiction to rule on his third assignment of error. Further, we note that, because the trial court issued a final appealable order on August 25, 2015 denying the ALS appeal, the subsequent November 2, 2015 order denying the "Motion to Reconsider" is a nullity. *State v. Kirk*, 9th Dist. Lorain No. 15CA010896, 2016-Ohio-6970, ¶ 7 ("A motion to reconsider after a final judgment is a nullity, and all judgments from such motions to reconsider are nullities."). We exercise our inherent authority to vacate the November 2, 2015 order. *See Hairline Clinic, Inc. v. Riggs-Fejes*, 9th Dist. Summit No. 25171, 2011-Ohio-5894, ¶ 7 (This Court has inherent authority to recognize and vacate nullities.).

### III.

{¶26} Mr. Foos' first and second assignments of error are overruled. We do not reach the merits of Mr. Foos' third assignment of error as it constitutes an untimely appeal from the trial court's ALS appeal determination. The December 21, 2015 judgment of the trial court is affirmed. The trial court's November 2, 2015 order is vacated. The appeal is dismissed to the extent that Mr. Foos has attempted to challenge the August 25, 2015 denial of his ALS appeal.

Judgment affirmed in part,
and vacated in part,
and appeal dismissed in part.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

STEPHEN MCGOWAN, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, GERTRUDE E. WILMS, Chief Prosecutor, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.